## Cridge and Wife *versus* Hare.

1. Where a married woman gives a mortgage upon her separate estate she may, in a subsequent suit thereon, set up as a defence the fact that she was induced to execute the mortgage by reason of fraudulent representations made to her with reference to the nature of the consideration thereof, even though such representations were not made by the mortgagee nor with his knowledge and consent.

2. It is the duty of all persons taking from a married woman a mortgage of her separate estate, to ascertain affirmatively that she has not been deceived by any false representations of her husband as to the consideration of said mortgage.

3. The mere fact that a paper has been read in the presence of a husband constitutes no evidence that the contents of such paper are known to his wife.

October 14th 1881. Before Sharswood, C. J., Mercur, Gordon, Paxson, Trunkey and Sterrett, JJ. Green, J., absent.

Error to the Court of Common Pleas No. 1, of *Allegheny county :* Of October and November Term 1881, No. 175.

Scire facias sur mortgage, by Thomas Hare against Joseph Cridge and Maria Cridge, his wife. On the trial, before Bailey, J., the plaintiff put in evidence the mortgage, drawn in the usual form, duly executed by the defendants and separately acknowledged by Mrs. Cridge. The plaintiff testified that the mortgage was given to and received by him as collateral security for a bill of sale of goods which he sold and transferred to Mrs. S. E. Workman, wife of John Q. Workman. The bill of sale bore the same date as the mortgage, and contained the following clause : " And as security for the payment of the said sum

[Cridge *v.* Hare.]

of one thousand dollars, I hereby acknowledge the receipt of a mortgage from Joseph Cridge and Maria, his wife, for said sum, payable in one year from this date, with legal interest."

The defendants alleged that the mortgage was executed in consideration of an agreement of sale of the said goods by Hare to Mr. Cridge, the mortgagor; that Mrs. Cridge was induced to execute it on such representations, and that the goods having been sold and transferred by Hare to another (Mrs. Workman) no consideration passed, and the mortgage was invalid as to Mrs. Cridge, by reason of misrepresentations to her, and fraud in the use of the mortgage.

Defendant's counsel offered the defendant, Mrs. Cridge, as a witness, to prove " her knowledge at the time of her execution of the mortgage, and the purpose for which she gave it." Objected to, because the offer does not propose to show misrepresentations or deceit on the part of the plaintiff. Objection sustained; exception. (1st assignment of error.)

The plaintiff presented, inter alia, the following point. (3) " The right of Thomas Hare to recover is not affected by any representations made to Mrs. Cridge, or by any fraud practiced upon her in order to secure her signature, unless he (Hare) was a party to such fraud and misrepresentations, or had knowledge of the same." *Answer.* Affirmed. (5th assignment of error.

The court charged the jury, inter alia, as follows: " Mrs. Cridge then passed this mortgage over to the representative of Mr. Hare, for the time being, Mr. Watterson, the notary public, and he took it away, put it on record and gave it to Mr. Hare. If there was any fraud committed upon Mrs. Cridge by anybody, it is manifest, and I have so instructed you, that there is no evidence that it could have been directly by Mr. Hare, because, according to the testimony, Mr. Hare and Mrs. Cridge never met, consequently there was no direct fraud practiced upon her by Mr. Hare. If there was any fraud practiced upon her it must have been either through the agency of her husband, or of John Q. Workman. Suppose there was fraud practiced upon her by John Q. Workman or Mr. Cridge, if it was not with the knowledge, consent, connivance, or agreement of Mr. Hare, he has nothing to do with it whatever, and is not bound by it in any way; but Mrs. Cridge, having put this mortgage into the hands of a party who could make a bad use of it, so far as she was concerned, was liable to the party to whom it was transferred." (14th assignment of error.)

" If you believe that this paper (the bill of sale to Mrs.

Workman) was read to Mr. Cridge in the office of Brown & Lambie, by Marshall Brown, and if you believe the testimony that the paper was read to Mr. Cridge in his hearing, then your verdict will be for the plaintiff."

At the close of the charge a juror asked: "If we believe, independent of all the other testimony, that the bill of sale was read in the presence of these parties, our verdict will be for the plaintiff ?"

By the Court.—"I have instructed you if you believe that that bill of sale was read in the office of Brown & Lambie by Marshall Brown, in the presence and hearing of Mr. Cridge, that your verdict will be for the *plaintiff*." (17th assignment of error.)

Verdict for plaintiff, for the amount of the mortgage, with interest, and judgment. The defendants took this writ of error, assigning for error inter alia, the exclusion of Mrs. Cridge as a witness, the answer to plaintiff's third point, the portion of the charge above quoted, and the answer to the above question by the juror.

*C. S. Fetterman,* for the plaintiffs in error.—The testimony showed that Mrs. Cridge executed the mortgage supposing it was to secure her husband's obligation for the purchase of the goods from Hare. If in fact it was to secure the debt of Mrs. Workman, of which Mrs. Cridge had no knowledge, she is not bound by it. The court below ruled that to avoid her mortgage it was necessary to show that Hare was an actual party to the fraud by which she was deceived. In this the court erred. Where a man takes a mortgage from a married woman he is bound to inquire from her, the same as if he were taking an assignment of a mortgage executed by one sui juris: Michener v. Cavender, 2 Wright 334. Mrs. Cridge was a competent witness to prove her understanding of the transaction; and the purpose for which she executed the mortgage. So far as the testimony shows she never heard of Mrs. Workman being the purchaser of the goods, for which the plaintiff claimed the mortgage was given as security. The court instructed the jury that if the bill of sale was read in the presence of *her husband,* the verdict should be for the plaintiff against both defendants.

*John S. Lambie (A. M. Brown,* with him), for the defendant in error.—The evidence of Mrs. Cridge was excluded because the offer did not propose to connect Hare with the alleged fraud. The mortgage was duly executed and the notary's certificate was conclusive in the absence of evidence that the plain-

[Cridge *v.* Hare.]

tiff was a party to the alleged fraud : Heeter *v.* Glasgow, 29 P. F. Smith 79 ; Singer *v.* Rook, 3 Norris 442.

The mortgage of a married woman to secure the debt of her husband or of a third person is binding upon her: Black *v.* Galway, 12 Harris 18 ; Haffey *v.* Carey, 23 P. F. Smith 431 ; Daubert *v.* Eckert, 13 Norris 255 ; Radford *v.* Carwile, 13 W. Va. 572.

Mr. Justice TRUNKEY delivered the opinion of the court, October 31st 1881.

A married woman may mortgage her estate for her husband's benefit, or to secure his existing debts and future indebtedness: Haffey *v.* Carey, 23 P. F. Smith 431. She may borrow money on the security of her mortgage and immediately give the money to her husband : Daubert *v.* Eckert, 13 Norris 255. The right of disposition is incident to her separate property and she may sell or give it to whom she pleases ; but generally she can only convey her real estate with the consent of her husband, manifested by his joining in the deed. Her mortgage deed is valid when given to secure the debt of a stranger, upon the same principle that it is when given for her husband's debt. She can make no binding executory contract except as authorized by statute, nor can she convey her real estate without compliance with the statutory requisites. The consideration for her deed may be valueless to herself and yet good. It has been settled that when she can convey her land she may mortgage it. Though a mortgage is often called a mere security for a debt and in many respects is so treated, yet it is the conveyance of the land, subject to an equity of redemption, executed in the same manner as an absolute deed.

Nothing on the face of this mortgage shows that it is a collateral security for another's debt. Apparently it is for a debt of the mortgagors amounting to $1,000, and accords with their allegation that Cridge bought the property from Hare for that sum. The notary informed Mrs. Cridge of its contents just as it reads, when he took her acknowledgment. She neither saw the bill of sale nor heard it read. Nobody told her it was made to Mrs. Workman. There is no evidence that she had knowledge that the mortgage was not taken for her husband's debt. If the jury believed his testimony they would have found, had the question been submitted, that she was informed that Hare would sell the property to him for the mortgage, and upon that she made it. Her own testimony ought to have been received, when offered to prove this fact.

Hare is the mortgagee, but if in any view of the facts he should be treated as an assignee of the mortgage, the mortgagors, or either of them, may defend on the ground that it was pro-

[Dean v. Warnock.]

cured by fraud, or that a fraudulent use was made of it. An assignee takes subject to all defences arising from matters connected with the execution and use of the mortgage, unless he inquire of the mortgagor and learn that there are none. The mortgagee is in no better position. Per WOODWARD, J.: Michener v. Cavender, 2 Wright 334. Stoddart v. Robinson, 4 P. F. Smith 386, rules that under the special circumstances in that case the loose affidavit of defence was insufficient; not that it is necessary to show that the mortgagee had knowledge that the mortgagor was induced by fraud to give the mortgage. Hare did not take on the faith of a certificate of no defence, and, perhaps, that would not preclude defence, for he is a party in the transaction. The delivery of the mortgage by Mrs. Cridge to Waterson, Hare's representative, was of like effect as if she had delivered it to Hare, and gave no power to any party to make a bad use of it. Neither Hare nor Waterson told her a falsehood; they told her nothing of the bill of sale already made to Mrs. Workman, nor did they inquire if she knew that the mortgage was a collateral security. If she was induced to give the mortgage on the representation that it was for purchase-money of property sold to her husband, she may avoid it for the deceit. We are of opinion that the instructions set forth in the fifth, fourteenth and seventeenth assignments were erroneous.

If the jury believed that the bill of sale was read in the presence and hearing of Cridge, that fact would warrant the remarks of the learned judge of the common pleas as to him, but by no means justify a peremptory instruction to render a verdict against Mrs. Cridge.

Judgment reversed, and venire facias de novo awarded.